[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Maple Leaf Construction, Inc. (Maple Leaf), appeals a decision of the defendant, Town of Somers Zoning Board of Appeals (ZBA), reconsidering a prior granting of a variance, and subsequently denying the variance to Maple Leaf to allow a lot frontage of fifty feet which would have been the width of the proposed land known as "Quail Run." The ZBA had previously granted the variance on October 13, 1994. The plaintiff appeals pursuant to General Statutes § 8-8.
PROCEDURAL HISTORY/FACTS
On September 22, 1994, Maple Leaf applied for a variance of Section 4.05 of the Somers Zoning Regulations to obtain a lot frontage of 50 feet for property entitled Lot 44 located on Pond Circle within the boundaries of a partially completed subdivision known as Heron Pond in Somers, Connecticut.[1] [Return of Record (ROR), Item 2). Lot 44 had access and frontage along a one lot cul-de-sac known as Quail Run. (ROR, Item 7b). The Somers Planning and Zoning Commission (Commission) had approved the Heron Pond Subdivision on July 23, 1987, with the understanding that Quail Run would provide the sole access for Lot 44. (ROR, Item 7C). In 1990, the Town of Somers amended its subdivision and zoning regulations. The amended regulations provided that cul-de-sacs shall serve no fewer than three interior lots. (ROR, Item 1, section 6.02.02). Consequently, Quail Run could not be approved to provide access to Lot 44 pursuant to the new regulations.
Maple Leaf requested the variance because "[t]he lot was rendered non-conforming by a change in the regulations since the subdivision where it is located was approved. A request for an of time in which to complete the approved subdivision was by the Commission on June 30, 1994."[2] (ROR, Item 2).
On October 13, 1994, following a public hearing, the ZBA granted Maple Leaf the variance because "[t]he recognized hardship was the non-conforming rendering of this lot #44 by an amendment to the Somers Zoning Subdivision Regulations on December 20, 1990." (ROR, Item 3b). CT Page 4054-NN
The ZBA published notice of its decision to grant the variance on October 21, 1994. (ROR, Item 3b).[3] On November 1, 1994, George Boisvert, the Somers Zoning Enforcement Officer (ZEO), wrote a letter to John Torres, chairman of the ZBA, to inform him that "an error was committed by the Zoning Board of Appeals in reference to the aforementioned property." (ROR, Item 8-b). Mr. Boisvert indicated that Lot 44 was no longer a non conforming lot as represented at the October 13, 1994 hearing, but that due to the expiration of the Heron Pond Subdivision on July 23, 1994, Lot 44 had ceased to exist. Boisvert further indicated that the expiration of the subdivision and denial of the extension request rendered the Heron Pond Subdivision, of which Lot 44 was a part, into one large conforming 26 acre tract of land with over 300 feet of frontage on Florida Road and Pond Circle. (ROR, Item 8-b).
After receiving this information, the ZBA held a special meeting on November 2, 1994 to review its previous decision of granting the variance to Maple Leaf. (ROR, Item 4-b). The ZBA notified Maple Leaf's attorney of this meeting. (ROR, Item 11-d).
At this meeting, the ZBA held a hearing on the matter and voted to reconsider its October 13, 1994 approval of the variance. (ROR, Item 5-b; Supplemental ROR, Item 6-b). The ZBA, however, tabled the vote until the next scheduled meeting, to be held on November 10, 1994. (ROR, Item 5-b; Supplemental ROR, Item 6-b). On said date, the ZBA held another hearing on the matter and voted to deny the variance on the ground that there was "no hardship evident for the granting of this variance as this lot is part of a large conforming lot of record in Somers." (ROR, Item 3-d; Supplemental ROR, Item 6-c). The ZBA published legal notice of its decision in the Journal Inquirer on November 18, 1994.
On November 22, 1994, the plaintiff filed an appeal with the clerk of the superior court, judicial district of Tolland at Rockville. The plaintiff asserted that the ZBA acted illegally, arbitrarily and in abuse of its discretion in deciding to reconsider and reverse a previously granted variance because the ZBA (a) failed to issue a copy of the variance to the plaintiff for recording after the fifteen day appeal period had passed from the publication of the notice of the granting of the variance on October 21, 1994; (b) violated the provisions of General Statutes § 1-21; (c) selectively enforced the law against the plaintiff; (d) made factual determinations on evidence not presented at any hearing; and (e) prejudged the application at the time of the vote. The plaintiff further argued that the ZBA's vote on November 2, CT Page 4054-OO 1994 and November 10, 1994 were useless acts because the application had previously been approved and there was no pending application and that there was no material change of circumstances which would justify the ZBA's change of position. The defendant, ZBA, filed an answer and a return of record on April 10, 1995.[4] On January 10, 1996 and January 31, 1996, the parties appeared before the court and argued the merits of the appeal.
JURISDICTION
In order to take advantage of a statutory right of appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which create that right.Simko v. Board of Appeals, 206 Conn. 374, 377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply may subject the appeal to dismissal. Id.; Capalbo v.Planning Zoning Board of Appeals, 208 Conn. 480, 485,547 A.2d 528 (1988).
A. Aggrievement
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). The question of aggrievement is essentially one of standing.DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the court must dismiss the appeal. Id.
At the time it applied for the variance, Maple Leaf claimed that Lot 44 was a non conforming lot which required a variance from the 175 feet of frontage required on Pond Circle because Quail Run could not be approved under the current regulations as amended in 1990. Maple Leaf claimed that Lot 44 had no other access other than Quail Run and, in essence, was a "trapped piece back there." (ROR, Item 6, p. 6).
The ZBA argues, and the court so finds, that because the original 1987 approval for Phase III of the Heron Pond Subdivision had expired on July 23, 1994 and the Commission had denied Maple Leaf an extension of the original approval, Lot 44 joined adjacent property to form one large conforming parcel of land. Therefore, Maple Leaf no longer owned a lot entitled "Lot 44" or land entitled "Quail Run," but instead owned a 26 acre tract of land with over 300 feet of frontage on Florida Road and Pond Circle.[5]
CT Page 4054-PP
The record further reflects that at the time Maple Leaf applied for the variance, it was not even the record owner of the land formerly known as Quail Run.
In a companion case, Boisvert v. Town of Somers Zoning Boardof Appeals, CV 940056834, the court found that Maple Leaf did not have standing to apply for the variance. See supra note 3. The court finds that in this appeal, the plaintiff did not and does not have standing to bring this appeal for the same reasons as set forth in Boisvert. "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." Mystic Marinelife Aquarium, Inc. v. Gill,175 Conn. 483, 492, 400 A.2d 726 (1978).
The ZBA claims that because Maple Leaf did not own the land formerly known as Quail Run, its request for a variance on Quail Run in order to build on the lot formerly known as Lot 44 is invalid. Accordingly, the ZBA contends that Maple Leaf has no legal or personal interest in the outcome of the proceeding.
The record clearly reflects that Maple Leaf did not have title to the land formerly known as Quail Run at the time of the ZBA's decision or when Maple Leaf applied for the variance, but rather had an easement to use the land.
The court concludes that Maple Leaf did not own the land formerly known as Quail Run at the time of the application for the variance or at the time this appeal was filed.[6] Nevertheless, Maple Leaf claims that it has standing because the easement to use Quail Run, which it retained, provided it with a sufficient legal interest in the land formerly known as Quail Run to apply for the variance.
The court has found no appellate court decisions addressing the issue of whether an easement constitutes a sufficient legal interest to maintain an appeal. The court has found, however, two superior court decisions on this issue. In both cases, the court held that pursuant to General Statutes § 8-8, which the court found to be clear, there was no standing to appeal by the holder of either an exclusive or nonexclusive easement. Shelton Square v.Shelton Planning Zoning Commission, Superior Court, judicial CT Page 4054-QQ district of Ansonia/Milford at Milford. Docket No. CV90033652S (April 24, 1991, Fuller, J.); Shelton Square v. Shelton Planning Zoning Commission, Superior Court, judicial district of Ansonia/Milford at Milford. Docket No. CV91034386S (April 23, 1991, Fuller, J.).[7]
Maple Leaf has failed to provide the court with any case law supporting the proposition that an easement is a sufficient legal interest to convey standing to the owner of the easement, despite the fact that at the last court hearing on the matter the court invited the parties to submit briefs on this issue, and, in particular told Maple Leaf's attorney that it wanted something on this issue to support Maple Leaf's aforementioned claim. None of the parties filed briefs.
Accordingly, the court finds that Maple Leaf lacked standing to take an appeal from the decisions of the ZBA, subject of this appeal.
B. Timeliness
General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal. . . within fifteen days from the date that notice of the decision was published. . . ." Such appeal "shall be commenced by service of process in accordance with [section 8-8]." General Statutes § 8-8 (b). The ZBA published notice of its decision to deny the variance in the Journal Inquirer on November 18, 1994. (ROR, Item 3b). The plaintiff served the Town of Somers in accordance with General Statutes § 8-8 on November 23, 1994. This appeal, therefore, is timely.
STANDARD OF REVIEW
A trial court may grant relief in an appeal from a decision of an administrative authority only where the authority has acted unreasonably, illegally, arbitrarily or has abused its discretion.Smith v. Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089
(1993). The court, however, "may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." (Internal quotation marks omitted.) Frito-Lay, Inc. v. Planning ZoningCommission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). The court simply determines whether the record reasonably supports the conclusions reached by the agency. DeBeradinis v. ZoningCT Page 4054-RRCommission, 228 Conn. 187, 198, 635 A.2d 1220 (1994). Where the ZBA has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970). If the record supports any of the reasons stated by the ZBA [to deny the variance to Maple Leaf] then the court must uphold the ZBA's decision.DeBeradinins v. Zoning Commission, supra, 228 Conn. 187.
"The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991).
DECISION
The plaintiff first contends that the ZBA violated General Statutes § 1-21 by failing to give proper notice of the special meeting on November 2, 1994; failing to include the business relating to the plaintiff on its agenda of the regular meeting held on November 10, 1994; failing to obtain the required two thirds vote before considering and acting on the plaintiff's business at the November 10, 1994 meeting; and failing to vote on the motion to reconsider on November 2, 1994, the same date the ZBA made the reconsideration vote, which was in violation of the ZBA's procedural rules. See Plaintiff's complaint.
The record reflects, and the court so finds, that the plaintiff received adequate notice before each of the hearings to reconsider the granting of the variance. The ZBA sent a letter, dated November 1, 1994, to Maple Leaf's attorney, apprising him that the ZBA had scheduled a special meeting on Wednesday evening, November 2, 1994, "to review the decision rendered for lot # 44 of Heron Pond Sub-division at the business meeting following the hearing on October 13, 1994, and later published in the Journal Inquirer on Friday, October 21, 1994." (Supplemental ROR, Item 11-d). The record further reflects that Maple Leaf's attorney both attended and participated in the November 2, 1994 special meeting. (ROR Item 5-b; Supplemental ROR, Item 6-b).
The record also demonstrates that at the November 2, 1994 special meeting, which Maple Leaf's attorney attended, a motion was made, seconded and unanimously approved that the ZBA would reconsider the variance granted to Maple Leaf Construction, Inc. for a fifty-foot lot frontage for Lot #44 on Pond Circle, Somers at meeting of the Zoning Board of Appeals to be held on Thursday, November 10, 1994. (Supplemental ROR, Item 6-b); see also (ROR, CT Page 4054-SS Item 3-c) (notice of ZBA decision to reconsider, dated November 2, 1994). The record further reflects, in contravention of the plaintiff's assertion, that the November 10, 1994 printed agenda, under the heading "OLD BUSINESS" (see page 2), states that the ZBA will "[o]pen discussion on Lot #44 Heron Pond and decide on this appeal if possible or entertain motion to table decision to later specified date." (ROR, Item 4-b). Maple Leaf's attorney both attended and participated in the November 10, 1994 meeting. (Supplemental ROR, Item 6-c).
Maple Leaf's attorney's attendance and participation at the hearings, as well as his failure to object to any lack of notice, constitutes a waiver of any alleged defect in personal notice. SeeSchwartz v. Town of Hamden, 168 Conn. 8, 14-15, 357 A.2d 488
(1975); Dram Associates v. Planning Zoning Commission, 21 Conn. App. 538,544, 574 A.2d 1317, cert. denied 215 Conn. 817,576 A.2d 544 (1990). Furthermore, the attorney's participation in the meetings, including reviewing exhibits and answering direct questions, demonstrates that he was not prejudiced by any alleged lack of notice. See (Supplemental ROR, Items 6a 6b). "Not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown. . . ." (Citations omitted.) Murach v.Planning Zoning Commission, 196 Conn. 192, 205, 491 A.2d 1058
(1985).
The plaintiff also contends that the ZBA failed to give notice, pursuant to General Statutes § 1-21 and Freedom of Information (FOI), twenty four hours in advance of the special meeting held on November 2, 1994. The record reflects that the ZBA prepared a letter, dated November 1, 1994, notifying Maple Leaf's attorney of the special meeting. The record does not indicate whether this letter was mailed or hand delivered, but it is clear that Maple Leaf's attorney knew of the special meeting because he attended and participated in the discussions. The ZBA's November 1, 1994 letter to Maple Leaf's attorney, which may have been hand delivered, indicates that the ZBA probably would have posted notice, pursuant to General Statutes § 1-21, in the Town Clerk's office by the close of business on November 1, 1994, the same date the letter, which was at least twenty-four hours prior to the special meeting. Moreover, the plaintiff has not shown that the ZBA failed to post this notice or failed to deliver notice to plaintiff's attorney on November 1, 1994, and although the plaintiff mentioned this issue in its complaint, it failed to elaborate on the issue in its brief or at subsequently held oral CT Page 4054-TT arguments. Because Maple Leaf has failed to brief this issue, the court deems it abandoned.[8] Matthew v. Griffin Hospital, 207 Conn. 125,129 n. 2, 540 A.2d 666 (1988); Hartford National Bank TrustCo. v. Tucker, 178 Conn. 472, 475, 423 A.2d 141 (1979). cert. denied, 445 U.S. 904 (1980). Consequently, the court finds no violation of General Statutes § 1-21.
Moreover, the court finds that the ZBA complied with the requisite time limitations as set forth in General Statutes § 8-7d. General Statutes § 8-7d(a) provides that: ". . . in all matters wherein a formal petition, application, request or appeal must be submitted to a . . . zoning board of appeals . . . and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearings."
Maple Leaf's original variance application was dated September 22, 1994. (ROR, Item 2). The ZBA opened the public hearing on October 13, 1994, within sixty-five days of September 22, 1994. (ROR, Item 3b). The ZBA closed the public hearing that same night. (ROR, Item 3-b). Notice of the decision was published on October 21, 1994, within the fifteen day publication period set forth in General Statutes § 8-7. (ROR, Item 3-b). The ZBA moved to reconsider its original decision on November 2, 1994, within fifteen days of the date of publication, which is the statutory time period in which to appeal pursuant to General Statutes § 8-8. (ROR, Item 5-b; Supplemental ROR, Item 6-b). Accordingly, no rights had vested in Maple Leaf until that period had expired. SeeCicala v. Administrator, 161 Conn. 362, 370, 288 A.2d 66 (1971) (holding that the decision of the commission is not final until appeal period has elapsed). Finally, the ZBA voted to deny Maple Leaf's variance on November 10, 1994, within sixty-five days of the completion of the October 13, 1994 hearing. (Supplemental ROR, Item 6-c).
The plaintiff also argues that because the ZBA conducts its meetings in accordance with Robert's Rules of Order, the ZBA's November 2, 1994 decision is illegal because a motion to reconsider can be made only on the date the original vote was taken, October 13, 1994. See Plaintiff's brief, p. 2-3 and Exhibit B. The court, however, is not convinced that Robert's Rules stands for the proposition that a motion for reconsideration must be made at the CT Page 4054-UU same meeting that a vote is taken. In addition, the record does not indicate that an official bylaw, regulation or statute mandates that the ZBA strictly comply with Robert's Rules. The court, therefore, concludes that there is no evidence that the ZBA follows Robert's Rules as anything more than a matter of convenience. Moreover, the record reflects that Maple Leaf's attorney participated in both the November 2, 1994 and the November 10, 1994 meetings and made no objection to the ZBA's voting procedures at either meeting. See (Supplemental ROR, Items 6-b 6-c). Accordingly, even if the ZBA's procedures were in violation of Robert's Rules of Orders, with which the ZBA is under no statutory mandate to comply, Maple Leaf has failed to show that it has suffered any prejudice as a result of the vote to reconsider being taken twenty days after the original vote on October 13, 1994. The court concludes, therefore, that the ZBA's recision of the variance, if substantively proper, satisfied the statutory time requirements and that any alleged procedural deficiencies were unfounded or, because Maple Leaf failed to demonstrate that it suffered prejudice, constituted harmless error.
The ZBA, in rescinding the variance, had determined, as the court did in Boisvert v. Town of Somers Zoning Board of Appeals,
CV0056834, that Maple Leaf had failed to show hardship, and, therefore, that the ZBA should have denied Maple Leaf the variance. Consequently, if the ZBA had the authority to reverse its decision prior to the expiration of the appeal period, Maple Leaf's appeal must be dismissed.
Generally, a Zoning Board of Appeals is precluded from reversing a prior decision "unless there has been a material change of conditions, or other considerations have intervened affectingthe merits, and no vested rights have arisen." (Emphasis added.)Wright v. Zoning Board of Appeals, 174 Conn. 488, 492, 391 A.2d 146
(1978); Rommell v. Walsh, 127 Conn. 272, 277, 16 A.2d 483 (1940). In the present action, the court finds the illegality of the original application, as determined in Boisvert v. Town of SomersZoning Board of Appeals, CV 940056834, to be an intervening consideration. Furthermore, the ZBA's subsequent recognition, after it had originally granted the variance, that Maple Leaf's attorney had presented erroneous information concerning Lot 44, specifically that Lot 44 was non conforming, constituted an intervening consideration. Accordingly, pursuant to Wright, the ZBA properly rescinded the granting of the variance once it learned that Lot 44 was not non conforming, and, consequently, failed to merit the requisite hardship needed to obtain a variance. CT Page 4054-VV
Furthermore, Connecticut case law provides that the ZBA may reconsider the granting of the variance under the applicable facts as presented in this case. In Sharp v. Zoning Board of Appeals,
Superior Court, judicial district of Bridgeport at Bridgeport, Docket No. CV910285052S (March 31, 1994, Levin, J.,11 Conn. L. Rptr. 399), the court held that a Zoning Board could reconsider its earlier decision at a later meeting after notice of that decision had been published, so long as the later meeting took place within the appeal period. In so holding, the court applied the rule set forth in Cicala v. Administrator, 161 Conn. 362, 288 A.2d 66
(1971), which provided that in the absence of a statutory
prohibition, an administrative officer may open a decision within the appeal period, for a proper purpose, including the correction of errors, to correct the decision, or to obtain a more adequate factual grounds for the decision. (Emphasis added.) Cicala v.Administrator, supra, 161 Conn. 368-70.
Accordingly, pursuant to the rule in Cicala, the ZBA properly rescinded its earlier decision. In the present action, the court can find no statute expressly prohibiting the ZBA from opening its decision. Second, as discussed supra, the ZBA's reconsideration on November 2, 1994 was within the fifteen day appeal period pursuant to General Statutes § 8-8. Finally, the reason for the ZBA's reconsideration was valid because it corrected what it genuinely perceived was a mistake, namely that Lot 44 was non conforming as Maple Leaf had presented at the original hearing on the issue. The transcript of the November 2, 1994 meeting clearly reflects that the ZBA believed it had erred.[9] See (Supplemental ROR, Item 6-b).
Consequently, the court finds that, pursuant to the Cicala
rule, as set forth in Sharp, the ZBA properly could reverse its decision after it had obtained additional facts, which demonstrated that the ZBA had made its original decision based on erroneous information.
Finally, the court rejects the plaintiff's argument that the ZEO illegally communicated with the ZBA. It was the ZEO's duty to advise the ZBA if the ZBA had acted illegally. The court concludes that the ZEO's letter to the ZBA attempted to demonstrate that the ZBA had acted improperly in its original granting of the variance. The court further finds that the record does not reflect that the ZEO had any improper communications with the ZBA or that the ZBA was "threatened" or "intimidated" by the ZEO's legal appeal. CT Page 4054-WW
The record amply supports the ZBA's decision to reconsider its original approval and then deny Maple Leaf's variance for the reasons as set forth in Boisvert. The plaintiff has not sustained its burden of showing that the ZBA acted illegally, unreasonably, arbitrarily or in abuse of its discretion in its above decisions.
Accordingly, the plaintiff's appeal is dismissed.
Rittenband, J.